| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br><br>Court Address:<br>1437 Bannock Street<br>Denver, Colorado 80202<br><br>**Plaintiff:** MAXIMILIANO ACOSTA<br><br>v.<br><br>**Defendants:** VIKING INSURANCE COMPANY OF WISCONSIN<br><br>*Attorneys for Plaintiff*<br>Chad P. Hemmat, No. 20845<br>Ethan A. McQuinn, No. 36618<br>Jason G. Alleman, No. 42570<br>Anderson, Hemmat & McQuinn, LLC<br>5613 DTC Parkway, Suite 150<br>Greenwood Village, Colorado 80111<br>Phone Number: 303/782-9999<br>Fax Number: 303/782-9996<br>chad@andersonhemmat.com<br>ethan@andersonhemmat.com<br>jason@andersonhemmat.com | DATE FILED: July 18, 2014 10:52 AM<br>FILING ID: 152E39C8D5295<br>CASE NUMBER: 2014CV32834<br><br><br>▲ Court Use Only ▲<br><br>Case No.:<br><br>Div.: |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** the Plaintiff, Maximiliano Acosta (hereinafter referred to as Plaintiff Acosta), by and through his counsel Anderson, Hemmat & McQuinn, L.L.C., and for his Complaint and Jury Demand against the Defendant, states and alleges as follows:

### INTRODUCTORY ALLEGATIONS

1. Plaintiff Acosta is an individual who is a resident and domiciliary of the City of Commerce, County of Adams, State of Colorado.

2. The Defendant, Viking Insurance Company of Wisconsin (hereinafter referred to as Defendant Viking) is a for profit company organized under the laws of the State of Wisconsin and actively doing business within the City and County of Denver, State of Colorado.

1

3.     This Court has jurisdiction over the subject matter of this action and the parties hereto and venue is proper in the County of Denver, because Defendant is a non-resident of this State and pursuant to C.R.C.P. 98, this matter may be tried in any County in which the Defendant may be found.

4.     On May 16, 2012, Plaintiff was driving his 1999 Honda Civic westbound on East 40th Avenue near the intersection with Airport Boulevard North in the City and County of Denver, State of Colorado. At that same time and place, Brandon Anderson, driving a 2001 Saturn was proceeding eastbound on East 40th Avenue and in a reckless, careless and negligent manner took the right of way from Plaintiff and made a left turn onto northbound Pena Boulevard striking the vehicle driven by Plaintiff resulting in injuries, damages and losses to Plaintiff.

5.     Brandon Anderson was an underinsured driver at the time of the subject collision, having only $25,000 of liability insurance coverage.

6.     At the time of the motor vehicle collision, Plaintiff Acosta had $25,000 of uninsured/underinsured motorist coverage available to him pursuant to his policy of insurance issued by Defendant Viking.

7.     Colorado law requires every automobile liability or motor vehicle liability policy issued in Colorado to include coverage for the protection of persons insured thereunder who are legally entitled to recover damages for bodily injury, sickness, or disease resulting from owners or operators of an uninsured motor vehicle C.R.S. §10-4-609(1)(a). Uninsured motorist coverage must include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. C.R.S. §10-4-609(c)(4).

8.     The purpose of the uninsured/underinsured motorist statute, C.R.S. §10-4-609, *et seq.*, is to enable an insured to obtain compensation from his/her automobile liability or motor vehicle liability insurer for loss resulting from negligent conduct of an uninsured or underinsured motorist that is equal to the compensation obtainable for the negligent conduct of a properly insured motorist.

9.     Insurance carriers owe their insureds a duty of good faith and fair dealing, are required to abstain from deceptive or misleading practices, and must keep, observe, and practice the principles of law and equity in all dealings with their insureds. See C.R.S. §§10-1-101, 10-3-1113.

10.    Colorado statutes identify unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, including, but not limited to the following:

    a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue (C.R.S. §10-3-1104(h)(I));

    b. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies (C.R.S. §10-3-1104(h)(III));

    c. Refusing to pay claims without conducting a reasonable investigation based upon all available information (C.R.S. §10-3-1104(h)(IV));

    d. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear (C.R.S. §10-3-1104(h)(VI));

    e. Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds (C.R.S. §10-3-1104(h)(VII));

    f. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement (C.R.S. §10-3-1104(h)XIV));

11. Additionally, Colorado law prohibits an insurance carrier from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of any first-party claimant (C.R.S. §10-3-1115(1)(a)), including a first-party claimant of uninsured and/or underinsured motorist insurance benefits.

12. Taking into consideration policy language Plaintiff had at the time of said crash with Defendant, said automobile insurance entitled Plaintiff Acosta to underinsured motorist benefits.

13. Relevant claim handling events prior to the filing of suit in this matter include:

    g. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement (C.R.S. §10-3-1104(h)XIV));

    h. On November 11, 2013, Plaintiff's counsel wrote Shannon Partain, Senior Claims Representative for Defendant Viking. Plaintiff's counsel noted that she was taking over the representation of Mr. Acosta in this underinsured motorist claim. Plaintiff's counsel asked Ms. Partain to explain how she valued Mr. Acosta's losses to only entitle him to $1,500 of underinsured motorist coverage.

    i. On November 21, 2013, Ms. Partain responded to Plaintiff's counsel and indicated that she did not allow Mr. Acosta's June 20, 2012 emergency room bill of $10,026.38 in her evaluation of Mr. Acosta's losses as a result of the motor vehicle collision. She stated the reason she did not include this emergency room

3

bill is because the treatment was for a seizure. Ms. Partain claimed that Mr. Acosta had seizure activity prior to the March 16, 2013 collision.

j.  On February 5, 2014, Plaintiff's counsel again wrote Ms. Partain, noting that she was denying underinsured motorist benefits on the basis that she believed that Mr. Acosta's seizures pre-dated the May 2012 motor vehicle collision. Plaintiff's counsel indicated that he had a detailed discussion with Mr. Acosta's primary care physician, Lane Bracy, M.D.

k.  Plaintiff's counsel enclosed a copy of the June 20, 2012 emergency room records, which do not indicate any history of prior seizures or prior use of seizure medication.

l.  Plaintiff's counsel also enclosed a January 30, 2014 letter confirming Plaintiff's counsel's conversation with Dr. Bracy, in which Dr. Bracy indicated that Plaintiff's seizure activity was to a reasonable degree of medical probability caused from the trauma of the motor vehicle collision.

m.  On February 5, 2014, Ms. Partain responded to Plaintiff's counsel in an email correspondence. She noted that she was not denying Mr. Acosta underinsured motorist benefits. She stated that she had a difference in opinion as to the value of the underinsured motorist claim and requested an extension of time until February 28, 2014 to review the additional documentation submitted.

n.  On the same day, February 5, 2014, Plaintiff's counsel granted Defendant until February 28, 2014 to evaluate the underinsured motorist claim.

o.  Also on February 5, 2014, Plaintiff's counsel wrote Ms. Partain by email telling her that Plaintiff had not had any medical care whatsoever for about five years prior to the motor vehicle collision. Further, Plaintiff's counsel indicated that Mr. Acosta had simply had a physical examination related to some pain spasms he was having. Plaintiff's counsel also asked Ms. Partain to share the basis for her opinion that Plaintiff had seizures before the motor vehicle collision due to the fact that Mr. Acosta affirmed that he had never suffered a seizure before the motor vehicle collision.

p.  On February 6, 2014, Ms. Partain responded to Plaintiff's counsel by email stating that page 18 and page 25 of the June 20, 2012 emergency room record support her opinion that Mr. Acosta suffered seizures prior to the motor vehicle collision.

q.  On February 7, 2014, Plaintiff's counsel wrote a letter to Ms. Partain indicating that he had reviewed the relevant pages of the emergency room record.

r. Plaintiff's counsel clarified that on June 20, 2012, Mr. Acosta suffered a grand mal seizure. The emergency room record notes only that Plaintiff's family members had noticed that Mr. Acosta had symptoms of seizures that predated the June 20, 2012 seizure that resulted in Plaintiff being brought to the emergency room.

s. Plaintiff's counsel also pointed out that the medical records must be viewed in light of Dr. Bracy's clear causation opinion that Defendant Viking had already been provided. Plaintiff's counsel clarified that the emergency room record only establishes that the family had observed that Mr. Acosta was having seizure symptoms prior to the motor vehicle collision.

t. In the February 7, 2014 letter, Plaintiff's counsel requested that Ms. Partain properly evaluate the underinsured motorist claim.

u. On March 4, 2014, Ms. Partain extended a new offer of $7,950 to resolve Plaintiff's underinsured motorist claim.

v. On March 13, 2014, Plaintiff's counsel wrote Ms. Partain indicating that Defendant Viking does not seem to appreciate the significance of Mr. Acosta having to live on epileptic seizure medication and having to worry about uncontrolled convulsions at any time of day.

w. Plaintiff's counsel asked Ms. Partain for any evidence that would suggest that Plaintiff was an epileptic before the motor vehicle collision. Plaintiff's counsel also asked if there was a doctor Defendant Viking was relying on that would support the fact that Mr. Acosta suffered seizures prior to the motor vehicle collision.

x. Plaintiff's counsel pleaded for Viking to surrender the $25,000 of coverage limits due to Plaintiff's serious injuries. Plaintiff's counsel asked for either a more detailed evaluation or a surrender of the $25,000 coverage limits.

y. On March 28, 2014, Viking decided to retain legal counsel to assist Viking in evaluating Plaintiff's underinsured motorist claim. On March 28, 2014, Plaintiff's counsel received a letter from Kevin Ripplinger, Esq. Mr. Ripplinger asked Plaintiff to provide medical releases to various medical providers in order to evaluate the underinsured motorist claim.

z. On April 15, 2014, Plaintiff's counsel wrote a letter to Kevin Ripplinger giving additional information Defendant Viking claimed to need to evaluate the underinsured motorist claim.

    aa. After nearly 30 days had passed with no response from Defendant Viking, Plaintiff's counsel sent a letter on May 12, 2014 to Kevin Ripplinger asking Defendant Viking to respond.

    bb. On May 14, 2014, Mr. Ripplinger wrote Plaintiff's counsel claiming that Viking had not been provided with all the necessary and required information that it needed to evaluate the underinsured motorist claim. On May 14, 2014, Plaintiff's counsel wrote an email to Mr. Ripplinger, again enclosing the letter documenting Dr. Bracy's opinion that Mr. Acosta's seizures were caused by the motor vehicle collision.

    cc. Plaintiff's counsel again asked Mr. Ripplinger if Viking was relying on a doctor with an opinion contrary to Plaintiff's treating physician.

    dd. On May 19, 2014, Mr. Ripplinger wrote Plaintiff's counsel indicating that Viking discounted Dr. Bracy's opinion as it was not a "medical opinion" or a "clear causation opinion."

    ee. Mr. Ripplinger acknowledged that Viking had received the medical records requested and that the records had been forwarded to Viking for review. Mr. Ripplinger represented that the only medical records still needed were Rural Metro Ambulance and University Hospital.

    ff. On May 20, 2014, Plaintiff's counsel wrote Mr. Ripplinger indicating that he was working under the assumption that Mr. Acosta had seizure related symptoms before the motor vehicle collision.

    ii. In the May 20, 2014 correspondence, Plaintiff's counsel clarified the context of the June 20th emergency room record and that the family was discussing post-accident seizure symptoms that occurred after the motor vehicle collision but <u>before</u> Mr. Acosta followed up with medical doctors.

    jj. Plaintiff's counsel again reminded Mr. Ripplinger that Plaintiff's counsel already clarified these issues with Dr. Bracy, Plaintiff's treating physician. Plaintiff's counsel indicated that Mr. Acosta had done everything possible to facilitate Viking being able to appropriately evaluate the claim. Plaintiff's counsel asked Mr. Ripplinger to respond with specific information Viking still needed to evaluate the claim.

    kk. On May 19, 2014, Mr. Ripplinger indicated that Viking still had not received the Rural Metro Ambulance and University Hospital medical records.

    14.    Plaintiff had previously provided releases to Defendant for the requested Rural Metro Ambulance and University hospital records on May 15, 2014.

15. Medical authorizations allow Defendant to obtain medical records directly from the medical provider.

16. There is no medical record in Defendant's possession that documents that Plaintiff suffered an actual seizure before the motor vehicle collision.

17. The January 30, 2014 letter from Plaintiff's counsel to Defendant documents Dr. Bracy's opinion that Plaintiff's seizure disorder was caused by the motor vehicle collision.

18. During the claims process, Defendant did not retain or consult with a medical doctor to dispute Dr. Bracy's causation opinion.

19. During the claims process, Defendant did not retain or consult with a medical doctor in determining the value of Plaintiff's underinsured motorist claim.

20. Pursuant to the policy of insurance between Plaintiff Acosta and Defendant Viking, the Defendant Viking assumed the responsibility for paying up to contractual insurance policy limits for injuries and damages caused by any underinsured motorist. Defendant Viking in violation of its obligation to Plaintiff Acosta failed and refused to properly evaluate said claim and concluded that the Plaintiff Acosta was entitled to only $1,500.

21. All damages to Plaintiff Acosta are in the past, present and future whether so specifically delineated in each paragraph or not.

### **FIRST CLAIM FOR RELIEF AGAINST DEFENDANT VIKING**
(Breach of Contract)

22. Plaintiff Acosta incorporates herein all allegations contained in Paragraphs 1 through 21 in the Introductory Allegations.

23. In consideration of payments of premiums, Defendant Viking issued a policy of insurance that provided coverage to Plaintiff Acosta at the time of the subject collision. Plaintiff Acosta was entitled coverage for benefits for the injuries he received at the hands of the underinsured motorist.

24. The policy issued by Defendant Viking constitutes a contract for underinsured motorist coverage.

25. Plaintiff Acosta has performed all obligations imposed upon him by the policy of insurance.

26. Plaintiff Acosta has made demand for receipt of underinsured motorist benefits to Defendant Viking under the above named insurance policy.

27. Defendant Viking has failed to adequately respond to Plaintiff Acosta's demands and has, in fact, offered only $1,500.

28. By Defendant Viking's actions, as detailed above and other misconduct to be revealed in discovery, the Defendant Viking breached the terms of the contract of insurance by failing to fulfill its duties as set forth in the policy.

29. As a direct and proximate result of the Defendant Viking's breach of contract of insurance, Plaintiff Acosta, as a foreseeable consequence, has been substantially damaged, been forced to incur expenses, costs and attorney's fees.

**WHEREFORE**, Plaintiff Acosta prays for relief all is as more particularly hereinafter set forth.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANT VIKING
(Breach of Good Faith and Fair Dealing)

30. Plaintiff Acosta incorporates herein all allegations contained in Paragraphs 1 through 29 in the Introductory Allegations and First Claim For Relief.

31. By virtue of the sale of their insurance policy to the named insureds at the time of the subject collision. Defendant Viking owed and owes Plaintiff Acosta a duty of good faith and fair dealing in fulfilling their duties to Plaintiff Acosta.

32. Defendant Viking's duties to Plaintiff Acosta include, among other things, the responsibility to give prior to Plaintiff Acosta's interests over their own, and to protect Plaintiff Acosta's economic interest and peace of mind.

33. By intentionally and willfully and/or without any substantial justification failing and refusing to pay Plaintiff Acosta's claim in a timely manner despite the validity thereof, Defendant Viking has breached their good faith obligation of fair dealing with Plaintiff Acosta and have committed the tort of bad faith breach of insurance contract, acting without a reasonable basis in law or in fact.

34. The aforementioned breach by the Defendant Viking of its good faith obligation of fair dealing includes, but is not limited to, the following actions in contravention of C.R.S. §10-3-1104(1)(h):

  a. Failure to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policy;

  b. Failure to provide and implement reasonable standards for the prompt investigation of claims arising under insurance policy;

8

    c. Refusing to pay the full value of claims without conducting a reasonable investigation based upon all available information.

    d. Not attempting in good faith to effectuate prompt, fair, and equitable settlement of the UM claim in which liability has become reasonably clear;

    e. Compelling Plaintiff Acosta to institute litigation to recover amounts due under the UM policy by offering substantially less than the $500,000 available under the UM policy;

    f. Failure to promptly provide reasonable explanation of the basis in the insurance policy in relation to facts or applicable law for denial of a claim, therefore the offer of a compromised settlement.

35. As a direct and proximate result of Defendant Viking breaching its duties to Plaintiff Acosta, Plaintiff Acosta has been injured and has been caused to incur expenses, costs, and attorneys' fees.

36. All damages to the Plaintiff Acosta are in the past, present, and future whether so specifically delineated in each paragraph or not.

**WHEREFORE**, Plaintiff Acosta prays for relief all is as more particularly set forth hereinafter.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
(C.R.S. §10-3-1115 and C.R.S. §10-3-1116)

37. Plaintiff Acosta incorporates herein all allegations contained in Paragraphs 1 through 36 in the Introductory Allegations and First and Second Claims For Relief. Defendant Viking is engaged in the business of insurance.

38. Plaintiff Acosta for purposes of the subject underinsured motorist policy is and was a first party claimant.

39. Defendant Viking unreasonably delayed and denied payment of a claim for benefits owed to Plaintiff Acosta, consistent with prohibited conduct detailed in C.R.S. § 10-3-1115.

40. Plaintiff Acosta is accordingly entitled to remedies for unreasonable delay and denial of benefits consistent with C.R.S. §10-3-1116 including attorney's fees, court costs, and two additional times the covered benefits.

**WHEREFORE**, Plaintiff Acosta prays for a judgment against the Defendant Viking as set forth below.

**WHEREFORE**, on account of the matters set forth in the First and Second Claims For Relief, Plaintiff Maximiliano Acosta, prays for a judgment in favor of the Plaintiff, Maximiliano Acosta, and against the Defendant, Viking, including:

a. All underinsured benefits.
b. Two additional times the covered benefits pursuant to C.R.S. §10-3-1116.
c. Reasonable attorney's fees and damages for further review and appeal.
d. Costs and expenses in such amount as are determined herein.
e. Interest on all damages at the highest legal rate.
f. Such other and further relief as is just and proper under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BEFORE A JURY OF SIX (6) PERSONS ON ALL ISSUES.**

**DATED** this 18th day of July, 2014.

ANDERSON, HEMMAT & McQUINN, L.L.C.
*s/ Ethan A. McQuinn*

---
Chad P. Hemmat, No. 20845
Ethan A. McQuinn, No. 36618
*Counsel for Plaintiff*

**Plaintiff's Address**:
7995 Ivy Wood Street
Commerce City, Colorado 80202